By the Court. Woodruff, J.
The complaint in this case shows, we think, a very clear case for relief, and entitling the plaintiffs to the interposition of the Court, to restrain the defendant from using the securities in his hands, upon the ground that the transactions between him and the plaintiff are usurious and void. If the facts stated by the plaintiffs are true, the defendant’s exactions were singularly exorbitant and oppressive.
This case, made by the complaint, the defendant seeks, by his answer, to rebut; and if he has fully met the charges of the plaintiffs, so that the case stands before us upon an equal balance of the evidence, or upon the oath of the plaintiffs, fully met, and opposed by the oath of the defendant, then we think the plaintiffs have no reason to complain of the modification of the injunction. Nor in such case, should we have deemed it erroneous to dissolve the injunction altogether, especially since there is no pretence in the complaint, that the defendant is insolvent, or not 'fully able to meet any responsibility the plaintiffs may be able to charge upon him by the final judgment, if rendered herein in their favor. The case, in this aspect, would stand upon the ground, that all the equities of the bill were fully met and denied by the answer, and by a defendant fully solvent, and of sufficient responsibility to answer to all claims the plaintiffs may establish.
It is, however, quite apparent, that the order appealed from did not proceed upon this ground; it contemplates the continued control of the Court over the securities in the defendant’s hands pendente lite, while it permits him to proceed to collect the judgments which it is the purpose of the complaint to reach and recover back.
With the apparent conclusion of the Justice, at Special Term, that the answer does not fully meet and disprove the allegations of the complaint, we concur.
The fact of the payment of very large sums by the plaintiffs, in consideration of the moneys loaned, or as a compensation to the defendant for having furnished to them the money, is admitted. These sums very greatly exceed the legal rate of interest.
The explanation given by the defendant is, in respect to very many of the payments, that they were not made in pursuance of any agreement made at the time of the respective loans, nor at any time previous thereto; but were paid to the defendant by the *665 plaintiffs, voluntarily, at the time of refunding the respective loans, as a mere gratuity for his extra trouble in procuring said loans.
In respect to others, the explanation is, that the premiums were paid voluntarily, as a mere gratuity, without suggesting that the idea of “ extra trouble” entered into the consideration of the parties.
In respect to others, it is said that the premium was paid to the defardant upon his purchasing from the plaintiffs their own notes, as a commission for his “ extra trouble” in procuring the money to emble himself to make such purchase.
We have, then, some fifty transactions, in which the plaintiffs were, in fact, borrowers, and the defendant, in substance, and in most cases in form, the lender, running through a period of about 15 months, in which very large premiums were confessedly paid by the plaintiffs, over and above legal interest.
We think it was the part of the defendant, if these transactions were susceptible of explanation, to have shown their legality by something more specific than the vague generalities by which the answer seeks to defend them.
It is true, that a voluntary payment of a mere gratuity by a borrower to the lender, on returning a sum legally borrowed, does not necessarily make the next loan between the same parties usurious, nor raise a presumption that it is so; but a long series of successive loans, and an invariable payment of large premiums on the return of the money, or renewal of the period of credit therefor, has, at least, a very suspicious appearance, which the suggestion of a gratuity does not remove. The reception of gratuities by the lender from the borrower, in such cases, may be adopting a legal term to express what both parties perfectly understand to be a most exorbitant exaction, and, in truth, a condition of the continuance of favors which succeed each other as fast as the “gratuity,” so-called, is bestowed.
Such is, to our minds, upon a review of the complaint and answer, the nature of the transactions in question.
As to the idea, suggested in some cases, that the premium was for extra trouble, it must suffice to say, that if a lender may, in any case, charge more than legal interest for lending his own money, or for buying of the borrower the borrower’s own note, *666 (upon which question it is unnecessary to speak decisively here,) the lender must, at least, show the facts and circumstances with sufficient particularity to enable the Court to see that there was some just and reasonable ground for such a charge, and some actual trouble taken, or service rendered, or sacrifice made: els3 the Court will be left to the probable inference, that, under circumstances like the present, it was, in truth, a mere cover, called by the name of compensation for “ extra trouble,” when no actual service was in fact rendered.
It is safe to say, that if any such charge can be permitted in any case, it can only be on clear allegation and proof of the actual and bona fide sacrifice of time, money, or property, for the benefit of the borrower, or for his accommodation.
The answer does not, we think, satisfactorily show this.
Without discussing the other particulars further, enough has been said to indicate our view of the effect of the answer, in reference to the matters contained in the account annexed to the complaint.
In respect to the judgments assigned, or caused by the plaintiffs to be assigned, to the defendant, he insists that he holds them by absolute purchase, having only given to them the privilege of repurchasing them within a limited time.
If we were bound to take the language of the writings as conclusive, or the mere words of the defendant’s answer, we must hold that the allegations in the bill, that the defendant took the assignments as security merely, were overcome. We do not so understand our duty. Parties seldom express in terms their design to secure to themselves an advantage, which they know to be illegal; and in weighing the proper effect of the answer, we may, and ought, to look at all the circumstances, and consider as well what is alleged and what is denied, as also what is probable.
The plaintiffs had long been borrowers from this defendant. They had béen long and continuously paying him, for the loans received, large amounts exceeding legal interest. In this state of things, they were anxious to purchase a j-udgment from Mr. Hilton, amounting to $6166.70, the immediate enforcement of which might operate greatly to their prejudice; they had negotiated a purchase, and had paid therefor all the purchase-money except,$2890.13. The defendant consented to advance this, and
*667 now claims that the real understanding was, that for so doing he was to be deemed an absolute purchaser, and entitled to collect and retain the whole sum of $6166.70, although the plaintiffs themselves were, as stockholders, liable for the amount.
And further than this, the claim of the defendant is; that for advancing a further sum of $2726.57, he was to be deemed an absolute purchaser of the plaintiffs’ judgment for over $21,000, (embracing the amount of the first judgment,) subject to no other condition than that the plaintiffs might become re-purchasers, by re-paying, within 30 days, the two sums of $2890.13 and $2726.57, and one of the before-mentioned usurious loans of $4000, amounting to $9616.70, together with a premium or profit thereon of over $3500, for the favor thus extended to the plaintiffs.
The relation of the parties in the previous transactions, the known need of the plaintiffs, the significant fact, that the defendant treated the plaintiffs as debtors, by taking their note for the amount of the defendant’s advances, with the premium aforesaid, seem to us to indicate that, in this transaction the plaintiffs were • borrowers merely, with a degree of probability, at least, not sufficiently explained by the suggestion in the defendant’s answer, that the note was taken as a memorandum, and not with intent to enforce it.
And this view is further supported, by the admitted fact, that when the thirty days expired, the plaintiffs, seeking a further extension for thirty days, were required to give their note for $10,000, although they had paid $7000, thus adding about $4000 to the exorbitant premiums already reserved to the defendant. Indeed, it is apparent, that the defendant has been reimbursed all, and even more, than he has advanced upon the judgments, and yet holds the plaintiff’s note for $10,000, for which these extravagant premiums, to the extent of, at least, $6000, constitute the consideration. The remaining $4000 being alleged to be one of the previous loans, already above referred to, upon, or for which premiums were charged, exceeding the legal rate of interest.
We are not satisfied, that the account of the transaction, by the defendant, is so credible, that upon the mere answer, the injunction should be denied. By whatever name the parties may have, in form, denominated the transactions, they savor strongly of de *668 vices to secure to the defendant large premiums on what the parties, in fact, intended as loans of money.
Under these views, it is quite apparent, that the defendant’s" answer has not so fully met and answered the complaint, that the injunction should have been dissolved; and such, we think, must have been the view of the Court, at Special Term, in refusing to dissolve the injunction.
But the Court did modify the injunction, so far as to permit the defendant to proceed to collect and enforce the judgments. We think this modification was made without considering the peculiar relation of the plaintiffs to the company against whom the judgments were recovered ; for it is, we think, clear, that; if the plaintiffs have made a case for an injunction, which is not overcome by the defendant, then the modification should no more have been made than a dissolution ordered, if it is apparent, that the modification will expose the plaintiffs to the very injury which it is the object of the action to prevent.
The judgments are recovered against the High Shoals Mining Company. That company is alleged to be under present embarrassments, which would force it into insolvency, and sacrifice its property, if the judgments should be immediately enforced against them, and as we can readily perceive, such enforcement might render the ultimate collection of the debts impracticable—■ at all events, the plaintiffs, if they establish their title to the relief sought, are most interested in that matter, and they desire that the judgments be not now enforced.
Again, the plaintiffs are large stockholders in that company, and are in that manner greatly interested in sustaining the company, and preventing a sacrifice of its property. In this view, they are largely interested in restraining the immediate enforcement of the judgments, and although, as between them and the company, or its other stockholders, they would have a right to enforce the judgments at once, the plaintiffs have, (if entitled to the relief sought,) a clear right to consider, and determine for themselves, how their interests, as creditors, can be best harmonized with their interests as stockholders, and manage and control the judgments accordingly.
But still further and more conclusively, it is alleged that the plaintiffs, as stockholders in the company, are liable for its debts. *669 Under such a responsibility, the control of these judgments and the preservation of the company from final insolvency, may be of very great moment to the plaintiffs.
If it were a matter of indifference to the plaintiffs, whether the money was or was not immediately collected, or, if both plaintiffs and defendant were alike interested, that the money should be collected, if possible, from the judgment debtor, then there would be obvious propriety in suffering the judgments to be enforced, and the defendant not being insolvent, it would be proper to suffer him to proceed with the collection. But the considerations above suggested, show that protection of the interest of the plaintiffs will not be so attained—to permit the defendant to proceed, is to defeat one of the principal objects of the action.
We conclude, therefore, that the order modifying the injunction should be reversed, and the injunction be reinstated.
The costs of this appeal must abide the event of the suit.